UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DARNELL J., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-cv-1225-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Darnell J. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 21).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 16. Plaintiff also filed a reply brief. *See* ECF No. 20. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on January 4, 2016, alleging disability beginning December 30, 2015 (the disability onset date), due to paranoid schizophrenia, anxiety, and bipolar disorder. Transcript ("Tr.") 189-201, 219. The claims were denied initially on

April 6, 2016, after which Plaintiff requested an administrative hearing. Tr. 19. On October 30, 2017, Administrative Law Judge Theodore Kim (the "ALJ") presided over a video hearing from Falls Church, Virginia. Tr. 19, 51-93. Plaintiff appeared and testified from Buffalo, New York, and was represented by Philip A. English and Sonia Sterrett, both non-attorney representatives. Tr. 19. Larry A. Underwood, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on October 9, 2018, finding that Plaintiff was not disabled. Tr. 19-30. On July 24, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 9, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 9, 2018 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through March 30, 2021;

2.  The claimant has not engaged in substantial gainful activity since December 30, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3.  The claimant has the following severe impairments: schizophrenia; lumbar spine degenerative disc disease; borderline intellectual functioning; and depression (20 CFR 404.1520(c) and 416.920(c));

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5.  The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 20 CFR 416.967(c)[1], except he can occasionally kneel, crouch, stoop, balance, and crawl; and can occasionally climb stairs and ramps.  He can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. The claimant is able to understand, carry-out, and remember simple instructions, make simple work-related decisions and occasionally deal with supervisors, co-workers, and the public. He can occasionally deal with changes in a routine work setting.  The claimant will be off task ten percent of the workday;

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7.  The claimant was born on November 11, 1960 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 19-30.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on January 4, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 30. The ALJ also determined that based on the application for supplemental security benefits protectively filed on January 4, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff challenges the ALJ's mental RFC finding. *See* ECF No. 13-1 at 12-19. Plaintiff argues that the ALJ did not provide good reasons for declining to adopt the opinions of treating physicians Joshua Morra, M.D. ("Dr. Morra"), and Shalin Shah, M.D. ("Dr. Shah"), and vocational rehabilitation counselor Nancy Conniff (Ms. Conniff"). *See id.* at 12-13. Plaintiff also argues that the ALJ should have developed the record further because he did not have all of Plaintiff's primary care and mental health records. *See id.* at 14.

In his second point, Plaintiff challenges the ALJ's physical RFC finding, arguing that the ALJ made the finding without any medical opinion about Plaintiff's physical functioning, and

therefore, impermissibly relied on his own lay interpretation of the evidence. *See* ECF No. 13-1 at 19-20. According to Plaintiff, the ALJ should have obtained a medical opinion about Plaintiff's physical functioning. *See id*. at 21-22.

The Commissioner argues in response that: the ALJ properly considered the evidence of record, including the medical opinion evidence; the ALJ's mental and physical RFC findings are supported by substantial evidence; and the ALJ had no further duty to develop the record. *See* ECF No. 19-1 at 5-25.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the record contained sufficient evidence for the ALJ to formulate an RFC that accounted for Plaintiff's limitations that were supported by the record, and no further development is required. The ALJ appropriately weighed the medical evidence, including the treatment notes, objective findings, medical opinions, and Plaintiff's testimony, and his RFC determination was supported by substantial evidence. Accordingly, the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-

5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted). Furthermore, the evaluation of the consistency of Plaintiff's allegations and the medical evidence of record is interrelated: "[t]he ALJ's decision to discount [plaintiff's] credibility influenced the ALJ's weighing of medical opinions that were based in part on [plaintiff's] reports, and the ALJ's evaluation of the medical opinions in turn informs whether medical evidence supported" the ALJ's RFC determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Here, the ALJ properly analyzed the opinions, as well as the other evidence of record, when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927.[2] With respect to Plaintiff's mental RFC, the ALJ considered and weighed the various opinions about Plaintiff's mental

---

[2] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, although the agency's final decision was issued on May 2, 2018, after the effective date of the final rules, Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

functioning and gave more weight to those that were consistent with the record as a whole. First, the ALJ relied, in part, upon the March 18, 2016 opinion of consultative psychiatric examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano"). Tr. 27, 286-87. Dr. Fabiano opined that Plaintiff had no limitation in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks independently, and make appropriate decisions; and a moderate limitation in his ability to maintain attention and concentration, relate adequately with others, and appropriately deal with stress. Tr. 286-87. Dr. Fabiano concluded that, despite Plaintiff's moderate limitations, his psychiatric problems did not appear to be significant enough to interfere with his ability to function on a daily basis. Tr. 287. An ALJ may rely on the opinion of a consultative examiner. *See Camille v. Colvin*, 652 F. App'x 25, 27 n.2 (2d Cir. 2016); *Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician); *see also Bona v. Comm'r of Soc. Sec.*, No. 1:15-CV-00658 EAW, 2016 WL 4017336, at *11 (W.D.N.Y. July 22, 2016) ("It is well settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence." (quotation omitted)).

Contrary to Plaintiff's claims that the ALJ did not explain how he incorporated the moderate limitations assessed by Dr. Fabiano into the RFC finding (*see* ECF No. 13-1 at 12), a review of the ALJ's decision shows otherwise. Tr. 24, 27. The ALJ incorporated Dr. Fabiano's moderate limitation in attention and concentration by restricting Plaintiff to work that required understanding, carrying out, and remembering, simple instructions and making only simple decisions. Tr. 24. The ALJ incorporated Dr. Fabiano's moderate limitation in interacting with others by restricting Plaintiff to work that required only occasionally dealing with supervisors, co-

workers, and the public. *Id.* The ALJ incorporated Dr. Fabiano's moderate limitation in handling stress by restricting Plaintiff to work that required only occasional changes in routine and only occasional contact with others, and that allowed him to be off task for 10 percent of the workday. *Id.*

Although Plaintiff appears to argue that Dr. Fabiano's moderate limitations indicated that Plaintiff was more restricted than the ALJ found (*see* ECF No. 13-1 at 12), moderate limitations do not preclude unskilled (simple) work, the type of work to which the ALJ restricted Plaintiff.[3] Tr. 29. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *Sipe v. Astrue*, 873 F.Supp.2d 471, 480 (N.D.N.Y. July 3, 2012) (holding that plaintiff could perform unskilled work based on the testimony of plaintiff, as well as medical opinions of consultative examiner and non-examining state agency examiner who found mild and moderate limitations in all relevant areas). Thus, the ALJ reasonably accounted for Dr. Fabiano's moderate (and less than moderate) limitations in the RFC finding.

The ALJ also explained that he gave Dr. Fabiano's opinion some weight because the opinion was supported by his examination findings. Tr. 27. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("[t]he more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion"). Specifically, Dr. Fabiano found that Plaintiff had a cooperative demeanor; an adequate manner of relating; coherent and goal directed thought processes, with no evidence of hallucinations; a euthymic (normal) mood; a full range affect; a clear sensorium; and full orientation to person,

---

[3] Of note, unskilled work requires understanding, remembering, and carrying out simple instructions; making simple work-related decisions, responding appropriately to supervision co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1568, 416.968; see SSR 85-15, 1985 WL 56857 *4. In addition, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857 *4.

place, and time. Tr. 26, 285-86. Dr. Fabiano found that Plaintiff had impaired attention and memory, but he could complete counting tasks and could remember five digits forward and two digits backward. Tr. 286. Dr. Fabiano noted that Plaintiff reported he could shop, manage money, take public transportation, clean, and do laundry. *Id*. Thus, the ALJ reasonably found that Dr. Fabiano's examination report provided support for his opinion that Plaintiff had, at most, moderate work-related limitations. Tr. 26.

The ALJ also explained that he relied on Dr. Fabiano's opinion because it was consistent with the record as a whole. Tr. 27. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that medical opinion"). For example, the ALJ noted that Plaintiff's treatment notes revealed that his memory, attention, and concentration were intact (Tr. 315, 324, 360, 513, 522); he had a cooperative, pleasant, or friendly demeanor (Tr. 309, 315, 324, 374, 389, 403, 406, 488, 513, 522); a good, appropriate, or euthymic/normal mood (Tr. 324, 327, 360, 403, 406, 489, 513); an appropriate affect (Tr. 315, 406, 489, 513, 522); an alert sensorium (Tr. 309, 389, 403, 406); coherent and relevant speech (Tr. 315, 327); goal-directed thoughts (Tr. 324, 327, 360, 522); full orientation (Tr. 309, 312, 315, 327); good or fair insight and judgment (Tr. 327, 360, 522); adequate or good fund of knowledge (Tr. 315, 324); average intelligence (Tr. 315); no delusions (Tr. 315, 513, 522); and no responses to internal stimuli (Tr. 324, 522). Tr. 27.

The ALJ also noted that Plaintiff's treatment records revealed that his treatment was conservative, consisting of medication management with Haldol and Risperidone. Tr. 26. A pattern of conservative treatment weighs against complaints of disabling symptoms. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (holding that it is proper for an ALJ to cite a claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v.*

*Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially routine and conservative, consisting of medication management and physical therapy). As the ALJ discussed, medical providers consistently noted that Plaintiff appeared stable on his medications (Tr. 315, 327, 329, 334, 335, 343, 388, 402); his schizophrenia was "very well controlled" (Tr. 388); he was "able to function well despite his on-going psychosis" (Tr. 334); and he did not require hospitalizations, crisis intervention, or emergency room treatment for his mental impairment (Tr. 334, 335, 336). Tr. 26.

In addition, the ALJ noted that Dr. Fabiano's opinion was consistent with Plaintiff's work history. Tr. 26. *See Snell v. Apfel*, 177 F.3d 128, 136 (2d Cir. 1999) (noting that a condition that had not deteriorated from the time that the claimant was working cannot generally be disabling). As the ALJ discussed, despite Plaintiff's history of schizophrenia, he managed to maintain employment in a warehouse (for 15 years) through 2015. Tr. 26, 40-41. The ALJ further noted that Plaintiff even worked in 2016, during the time he alleged he was disabled, doing maintenance work for his landlord. Tr. 22, 47, 206, 210-11. Although the ALJ found that the 2016 work was not substantial gainful activity, he nonetheless appropriately considered it in determining that Plaintiff retained the ability to work. Tr. 22, 25. 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if the work a claimant had done was not substantial gainful activity, it may show that the claimant can do more work than he actually did); *Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19 (W.D.N.Y. Dec. 23, 2014) (finding that the ALJ appropriately discredited claimant's allegations in part because he worked after his alleged disability onset date).

The ALJ further noted that Plaintiff engaged in a wide range of other activities that supported Dr. Fabiano's opinion, as well as provided an independent basis for the RFC finding.

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on activities of daily living to formulate the RFC assessment). As the ALJ aptly noted, Plaintiff went to the library and to food pantries (Tr. 56); he played chess with others (62, 341); and he went to a wellness center, where he exercised and played pool (Tr. 56, 62, 65, 505, 519). Tr. 26, 28. He went roller skating and to the movies (Tr. 61); he went to church for Christmas and Easter, and he attended a bible study class at a local mission (Tr. 63-64). Tr. 28. He did household chores, such as cooking, cleaning, and grocery shopping (Tr. 59, 226, 227); paid bills and managed his money; (Tr. 234); and he used public transportation (Tr. 66, 227, 286). Tr. 23. Plaintiff's wide range of daily activities demonstrate that he could perform at least simple tasks, occasionally interact with others, and manage routine daily stressors. *See Cheatham v. Comm'r of Soc. Sec.*, 1:17-CV-0782 (WBC) 2018 WL 5809937, at *10 (W.D.N.Y. Nov. 6, 2018) (finding that the ALJ's determination that plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with others is supported by plaintiff's activities, which included using public transportation, preparing meals, cleaning, shopping and playing basketball).

Moreover, Dr. Fabiano's opinion was also consistent with the opinions of other medical sources, who also found that Plaintiff had, at most, moderate mental limitations. For example, Dr. Fabiano's opinion was consistent with the March 29, 2016 opinion of state agency psychologist J. Ochoa, Ph.D. ("Dr. Ochoa"). Dr. Ochoa reviewed the evidence in the record and opined that Plaintiff had no restriction in his activities of daily living; only mild difficulties in social functioning; only moderate difficulties in maintaining concentration, persistence; and pace; and experienced no episodes of decompensation. Tr. 79. Dr. Ochoa concluded that Plaintiff could complete simple tasks with sustained attention and pace tolerance and could adapt to work-related changes and make simple work-related decisions. Tr. 83. Dr. Ochoa also opined that Plaintiff's

ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact; and his ability to tolerate and respond appropriately to supervision would also be reduced, but adequate to handle ordinary levels of supervision in the customary work setting. Tr. 28. Notably, Plaintiff does not challenge the ALJ's reliance on Dr. Ochoa's opinion. *See* ECF No. 13-1 at 12-19. As the ALJ explained, he gave some weight to Dr. Ochoa's opinion because it was consistent with Plaintiff's ability to play chess with his friends, attend church, attend bible study, and deal appropriately with authority. Tr. 28, 62-64, 233, 341. Although the ALJ is not bound by any findings made by state agency physicians, such doctors are highly qualified doctors who are also experts in Social Security disability evaluations, and the ALJ is required to consider their findings. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

Dr. Fabiano's opinion was also consistent with the March 14, 2016 opinion of Plaintiff's psychiatrist Anjum Haque, M.D. ("Dr. Haque"), who also assessed that Plaintiff had at most moderate limitations. Tr. 282-83. Dr. Haque specified that Plaintiff had a moderate limitation in understanding and remembering instructions, maintaining attention and concentration, and functioning in a work setting at a consistent pace. Tr. 27-28, 282-83. In addition, Dr. Haque opined that Plaintiff would be limited in his ability to work in a setting with a large number of people. Tr. 283. However, the ALJ explained that he assigned limited weight to Dr. Haque's opinion because he found it inconsistent with Plaintiff's activities of daily living, such as preparing meals, taking public transportation, shopping, and going to the movies, Tr. 27-28, 61, 66, 227, 286. Nonetheless, the ALJ accounted for the moderate limitations mentioned by Dr. Haque by restricting Plaintiff to work that was simple, entailed only occasional contact with others, and required only occasional changes in a routine, Tr. 24. At step five, the ALJ also found that Plaintiff was not disabled because he could do unskilled work, which, as discussed above, is not precluded by moderate limitations.

14

The ALJ also considered the April 5, 2018, opinion of treating mental health provider Dr. Morra. Tr. 26, Tr. 365-66. Dr. Morra opined that Plaintiff was not limited in carrying out instructions, interacting appropriately with others, and maintaining standards of personal grooming; moderately limited in his ability to understand and remember instructions, make simple decisions, maintain socially appropriate behavior without exhibiting behavior extremes, and function in a work setting at a consistent pace; and was very limited in his ability to maintain attention/concentration. Tr. 26, 365-66. The ALJ explained that he assigned limited weight to this opinion because, as previously noted, Plaintiff's mental status examinations revealed that his memory, attention, and concentration were grossly intact, which, in turn, undermines the opinion that Plaintiff was very limited in this area. Tr. 26, 315, 324, 360, 513, 522. Nonetheless, the ALJ restricted Plaintiff to simple work, that required only occasional changes in a routine, and that permitted him to be off task 10 percent of the workday. Tr. 24. In so doing, the ALJ accommodated Dr. Morra's restriction in concentration, despite giving it limited weight. The remainder of Dr. Morra's opinion indicated that Plaintiff had either no limitation or a moderate limitation in work-related areas, and thus, further supports the RFC finding. Tr. 366.

Plaintiff challenges the ALJ's evaluation of Dr. Morra's opinion on the basis that "the ALJ improperly diminished Dr. Morra's treating opinion, and improperly attributed [the] opinion to Dr. Frierary." Plaintiff also challenges the ALJ's consideration of the June 20, 2018 medical opinion stating that Plaintiff would need to avoid a high stress environment due to his schizophrenia. *Id.* (citing Tr. 26, 367). Plaintiff points out that the opinion was from Dr. Shah and Dr. Frieary and faults the ALJ for "diminishing" it on the basis that the signature was illegible. *Id.* [4] Plaintiff's argument is meritless, however, as the ALJ's inadvertent error was harmless. As discussed above,

---

[4] The Court notes that the page following Dr. Morra's opinion (Tr. 365-66) is the second page from an opinion rendered by medical resident Dr. Shah, apparently co-signed by Patrick Frieary, M.D. ("Dr. Frieary") (Tr. 367).

the opinion does not support Plaintiff's claim for disability, but, rather, provides support for the ALJ's RFC finding.

Furthermore, the ALJ's decision indicates that he provided another independent basis for giving the opinion limited weight. Tr. 26. The ALJ explained that the opinion was not informative, since a statement that Plaintiff may be limited does not assist the ALJ in determining what Plaintiff could do. *Id. See* 20 C.F.R. §§ 404.1527(c)(3), 16.927(c)(3) ("[t]he better an explanation a source provides for the opinion, the more weight [the ALJ] will give that opinion). However, once again, the ALJ's RFC finding accounts for this opinion by restricting Plaintiff to work that required only occasional changes in a work-setting, required only occasional contact with others, and permitted him to be off tasks 10 % of the time. Tr. 24. *See Figgins v. Berryhill*, No. 15-CV-6748, 2017 WL 1184341, at *10 (W.D.N.Y. Mar. 29, 2017) (explaining that, although the ALJ did not specifically reference "stress" in his RFC, he accounted for it in part by restricting plaintiff to work that entailed only occasional public contact); *see also Moxham v. Comm's of Soc. Sec.*, No. 3:16-CV-1170 (DJS), 2018 WL 1175210, at *10 (N.D.N.Y. Mar. 5, 2018) (rejecting plaintiff's argument that the ALJ's RFC finding failed to account for a stress limitation, noting that plaintiff "fail[ed] to illustrate how the mental limitations included in the ALJ's RFC (including a limitation to simple tasks and instructions, decisions on simple work-related matters, and frequent interaction with others) do not account for the possibility that she may be more susceptible to workplace stress). Thus, the June 20, 2018 opinion from Dr. Shah and Dr. Frieary, like the previously discussed opinions from Drs. Fabiano, Ochoa, Haque, and Morra, is consistent with the ALJ's RFC finding.

Finally, the ALJ also considered the reports of vocational rehabilitation counselor Ms. Conniff. Tr. 27. On August 31, 2017, Ms. Conniff opined that Plaintiff had limitations in social interaction, communication, comprehension/attention, activities of daily living, initiative, work

skills, and endurance. Tr. 467. On September 13, 2017, Ms. Conniff asserted that Plaintiff met the

criteria of being "significantly disabled" because he had serious limitations in three or more work-

related areas (including social interaction, comprehension/attention, and activities of daily living)

and required vocational services to reduce the impact of his limitations on employment. Tr. 449.

The ALJ noted that "disability" was an issue reserved to the Commissioner, and, therefore,

Ms. Conniff's statement that Plaintiff had a "disability" which qualified him for vocational

services was not entitled to special significance because it did not establish that Plaintiff had a

disability under the Act. Tr. 27. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (explaining that a

statement by a medical source that a claimant is "disabled" is a statement on an issue reserved to

the Commissioner, and not an opinion which can be binding thereon, or given controlling weight

or special significance).

The ALJ also explained that Ms. Conniff was not an acceptable medical source who can

provide medical opinions, and her statement was merely an opinion from an "other" source. Tr.

27. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (non-physician medical professionals like nurse

practitioners and counselors are "other" medical sources to be distinguished from "acceptable"

medical sources like physicians); SSR 06-3p, 2006 WL 2329939 (S.S.A.);[5] 20 C.F.R. §§ 404.1502,

416.902 (indicating that vocational counselors are not included in list of acceptable medical

sources for claims filed before March 27, 2017).

"[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical

sources] in making his overall assessment of a claimant's impairments and residual abilities, those

opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*,

---

[5] The Commissioner has recently updated regulations pertaining to medical evidence, which included rescinding several Social Security Rulings, including 06-3p and 96-2p, effective March 27, 2017. *See* 82 Fed. Reg. 16,869 (April 6, 2017) (clarifying effective date of rescission notice published at 82 Fed. Reg. 15,263 (March 27, 2017)). However, because those changes are in effect only for cases filed after that date, they do not apply to this case.

298 F. App'x 105, 108 (2d Cir. Nov. 5, 2008) (citing *Mongeur v. Heckler*, 722 F.2d at1039 n.2).

An ALJ is "free to discount the assessments [of such sources] accordingly in favor of the objective

findings of other medical doctors"); *see Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011)

("[T]he ALJ is empowered with the discretion to afford less than controlling weight, or even no

weight, to the opinion of 'other sources,'" as long as she "address[es] and discuss[es] the opinion").

The ALJ's decision should, however, reflect consideration of the information from an

"other" source so that a subsequent reviewer may follow the ALJ's reasoning. *See* 20 C.F.R. §§

404.1513(a) & (d), 416.913(a) & (d). In this case, the ALJ considered Ms. Conniff's statements,

and assigned them some weight, restricting Plaintiff to simple, lower-contact, lower-stress work.

Tr. 27. The ALJ did not assign it great or significant weight, however, because he found that Ms.

Conniff's statements were at odds with Plaintiff's mental status examinations, which, as discussed

above, showed that his memory, concentration, and attention were grossly intact. Tr. 27, 315, 324,

360, 513, 522. The ALJ was not required to afford these opinions controlling weight, and his

assignment of less than significant weight is supported by substantial evidence. Based on the

evidence in the record as a whole, which included the opinions of other providers, such as Dr.

Fabiano and Dr. Ochoa, who were acceptable medical sources, and based on a review which also

took into account Ms. Conniff's opinions, the ALJ restricted plaintiff to simple, low-contact,

lower-stress work, as more fully discussed above.

Plaintiff next argues that the mental RFC finding was based on a record that was not fully

developed. *See* ECF No. 13-1 at 13. Plaintiff asserts that the ALJ should have obtained a

clarification as to who authored the June 20, 2018 opinion from Dr. Shah and Dr. Frieary, which

the ALJ noted contained an illegible signature. *Id*. Plaintiff also contends that "it appears" that

treatment records are missing, including psychiatric and counseling records, as well as primary

care doctor records. *Id*. at 14. Contrary to Plaintiff's argument, the ALJ had no obligation to develop the record further.

As discussed above, the ALJ incorporated the limitations mentioned by Dr. Shah and Dr. Frieary regarding Plaintiff's need to avoid high-stress work. Remanding for the ALJ to correctly attribute the opinion to these practitioners would serve no purpose, as it would not change the outcome of the case. *See Zabala*, 595 F.3d at 409 (holding that remand is not necessary where the same result would be achieved by applying the correct legal standard); *see also Shinseki v. Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009) (explaining that an agency's error does not require remand when it is clear that a remand to correct the defective analysis would still result the same outcome on remand).

With respect to the records Plaintiff claims are "missing," the ALJ satisfied his duty to develop the record by inquiring, at the hearing, whether Plaintiff's record was complete. Tr. 38. Plaintiff's representative replied that the record was, in fact, complete. *Id. See Miller v. Berryhill*, No 17-cv-001108F, 2019 WL 2205048, at *5 (W.D.N.Y. May 22, 2019) (declining to remand where the ALJ asked plaintiff's counsel if any additional documents existed that should be added to the record, to which plaintiff's counsel replied "no"); *see also Gonzales v. Comm'r of Soc. Sec.*, No 16-cv-4612 (BMC), 2017 WL 1051119, at *4 (E.D.N.Y. March 19, 2017) (noting that at the hearing, the plaintiff's counsel "never alerted the ALJ to any gaps in the record," thus, the "alleged gap in the record is a theory of counsel in hindsight rather than one that should have been reasonably apparent to the ALJ"); *Streeter v. Comm'r of Soc. Sec.*, No. 5:07-cv-858 (FJS), 2011 WL 1576959 *4 (N.D.N.Y. Apr. 26, 2011) (holding that ALJ satisfied duty to develop when he asked plaintiff's counsel during the hearing if the record was complete and counsel responded affirmatively).

In addition, although the ALJ has a duty to develop the record, ultimately it is Plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (The claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps). Although the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a). In adhering to this responsibility, the claimant must "inform [the Administration] about or submit all evidence known to him that relates to whether or not he is blind or disabled." *Id.*; *see also McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps); *Burgess*, 537 F.3d at 128.

Furthermore, an ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). *see also Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record"). Here, the record was sufficient to support the RFC assessment. The ALJ had mental health treatment notes from Miller Broadway and Horizon Health Services; general medical records from Buffalo General Medicine Clinic and Sister of Charity Hospital; opinions from Plaintiff's psychiatrists, Dr. Haque and Dr. Morra, an opinion from Dr. Frieary, one of Plaintiff's primary care practitioners, an opinion and examination report from consultative examiner Dr. Fabiano, an opinion from state agency reviewing psychologist Dr. Ochoa, and Plaintiff's statements at the

hearing, in agency forms, and to his practitioners about his activities of daily living and functional abilities. Thus, the record before the ALJ sufficiently documented Plaintiff's mental impairments and treatment, and the ALJ was not obligated to seek out additional records. Plaintiff's attempts to argue otherwise are meritless, and the Court finds no error.

Plaintiff's argument that the ALJ improperly relied on his own lay opinion similarly fails. Plaintiff challenges the ALJ's finding that Plaintiff could perform a range of medium work, arguing that the ALJ made the finding in the absence of any medical opinion about Plaintiff's physical functioning. *See* ECF No. 13-1 at 19-24. Plaintiff asserts that the ALJ should have obtained a medical opinion about Plaintiff's physical functioning. *Id.* at 21-22. However, Plaintiff's argument is contrary to the Commissioner's regulations and Second Circuit case law. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record") (emphasis added); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (indicating that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record); *see also Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, and relying, instead, on the relevant medical findings in the treatment notes); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. at 9 (finding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment, and rejecting the argument that a medical opinion was required).

Based on the foregoing, while an ALJ's decision must be supported by substantial evidence, this does not mean that there must be a medical opinion expressly speaking to the physical portion of the RFC. Rather, the ALJ's decision may be supported by treatment notes, activities of daily living, portions of one or more medical opinions or a combination thereof, all of which the ALJ considered in this case, as recited extensively above. Thus, the ALJ's RFC finding for a range of medium is well supported by the record. *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'").

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical

evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including medical opinion evidence, treatment reports, and diagnostic testing, as well as Plaintiff's testimony, and those findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE